# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REYNALDO REYES,<br>    *on Behalf of Himself and All Others*<br>    *Similarly Situated,*<br><br>              Plaintiff,<br><br>v.<br><br>ZIONS FIRST NATIONAL BANK,<br>NETDEPOSIT, LLC, MP TECHNOLOGIES<br>d/b/a MODERN PAYMENTS, and TELEDRAFT,<br>INC.<br><br>              Defendants. | Civ. A. No. 2:10-cv-0345 |

## SETTLEMENT AGREEMENT

This Settlement Agreement, Stipulation to Class Certification, and Release ("Agreement") is made and entered into this ___ day of June, 2016 (the "Execution Date"), by and between plaintiff Reynaldo Reyes ("Class Representative" or "Plaintiff"), on behalf of himself and the Class Members (as defined below), and defendants Zions First National Bank, NetDeposit, LLC, and MP Technologies d/b/a Modern Payments (collectively, "Zions" or "Defendant").

## RECITALS

WHEREAS, Reynaldo Reyes filed the action entitled *Reyes v. Zions First National Bank, NetDeposit, LLC, MP Technologies d/b/a Modern Payments, and Teledraft, Inc.*, No. 2:10-cv-0345, in the United States District Court for the Eastern District of Pennsylvania (the "Action");

WHEREAS, the Action asserts claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d), against Zions and Teledraft, Inc. ("Teledraft") based on the alleged processing of ACH debit entries by Zions and of ACH debit

entries and remotely created checks by Teledraft on behalf of alleged telemarketers and Internet marketers identified in the complaints filed in the Action (the allegations of which are incorporated herein by reference), and the alleged withdrawal or attempted withdrawal of monies without authorization from the accounts of consumers on behalf of these telemarketers and Internet marketers;

WHEREAS, Zions denies that it engaged in any wrongdoing and further denies any liability for the claims alleged;

WHEREAS, Zions and Plaintiff have conducted an extensive investigation into the facts and law regarding the Action;

WHEREAS, Zions and Plaintiff have engaged in extensive, good-faith, and arm's-length settlement negotiations relating to the Action;

WHEREAS, Zions and Plaintiff understand that, if litigated further, the Action would require the resolution of numerous issues of law, fact, and procedure, the outcome of which is uncertain;

WHEREAS, Plaintiff and his counsel agree that this Agreement is fair, reasonable, and adequate with respect to the interests of Plaintiff and the Settlement Class (as defined below), and should be approved by the Court pursuant to Federal Rule of Civil Procedure 23(e);

WHEREAS, Zions and Plaintiff desire to settle the Action finally on the terms and conditions set forth herein and to avoid the burden, expense, and uncertainty of continued litigation;

NOW, THEREFORE, in consideration of mutual promises, covenants, and warranties contained in this Agreement, the receipt and sufficiency of which the Parties (as defined below) now acknowledge, and intending to be legally bound, the Parties agree as follows:

1.    **Definitions**

As used in this Settlement Agreement, the terms set forth in this section in boldface-type shall have the following meanings:

1.1    **ACH debit entry** shall mean a debit transaction attempting to deduct monies from a bank account through an automated clearing house.

1.2    **Agreement** or **Settlement** shall mean this document, including the text and any exhibits hereto.

1.3    **Class** shall refer to all individuals in the United States as to whom ACH debit entries or remotely-created check drafts on their accounts were prepared by Defendants on behalf of the merchants identified as "Telemarketing Enterprises" in Plaintiff's Second Amended Complaint during the period of January 26, 2006 through the present, and all individuals who incurred bank charges as a consequence of such ACH debit entries or remotely-created check drafts.

1.4    **Class Counsel** shall refer to the law firm of Langer, Grogan & Diver, P.C.

1.5    **Class Member** shall mean each member of the Class who does not timely elect to be excluded from the Class.

1.6    **Class Representative** and **Plaintiff** shall refer to Reynaldo Reyes.

1.7    **Court** shall refer to United States District Court for the Eastern District of Pennsylvania

1.8    **Defendants** shall refer to ZFNB, NetDeposit, Modern Payments, and Teledraft.

1.9    **Escrow Agent** means Howard Langer, Esq.

1.10    **Modern Payments** shall refer to defendant MP Technologies d/b/a Modern Payments.

**1.11**   **NetDeposit** shall refer to defendant NetDeposit, LLC.

**1.12**   **Parties** shall mean Reynaldo Reyes, on behalf of himself and the Class Members, and Zions.

**1.13**   **Person** shall mean any natural person or entity.

**1.14**   **Teledraft** shall refer to defendant Teledraft, Inc.

**1.15**   **Telemarketing Enterprises** shall mean the entities identified in paragraphs 11-20 of Plaintiff's Second Amended Complaint and referred to therein as the "Telemarketing Enterprises."

**1.16**   **RCC** shall mean a remotely created check.

**1.17**   **Released Parties** shall refer to ZFNB, Modern Payments, and NetDeposit and their past, present, and future officers, directors, employees, agents, stockholders, attorneys, servants, representatives, parents, subsidiaries, affiliates, partners, insurers, and to the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

**1.18**   **Zions** shall refer collectively to defendants Zions First National Bank, NetDeposit, LLC, and MP Technologies d/b/a Modern Payments.

**1.19**   **ZFNB** shall refer to defendant Zions First National Bank.

**2.**   **Settlement Payment**

**2.1**   **Settlement Fund.**  Within five (5) days of preliminary approval of the Settlement by the Court, Zions shall make payment directly to an escrow account at Huntington National Bank designated by Class Counsel in the amount of Thirty-Seven Million Five Hundred Thousand Dollars ($37,500,000.00), which shall constitute the Settlement Fund.

**2.2**   **The Escrow Account.** The escrow account shall be invested in United States Government Treasury Bills or Notes of no more than six months maturity (provided, however,

4

that such portions of the Escrow Account as may reasonably be needed to pay current expenses associated with providing notice to the Class and administering the Escrow Account and the settlement may be deposited in a federally insured bank account in an amount not exceeding $250,000.00). All interest earned on the Escrow Account shall become and remain part of the Escrow Account. The Escrow Account shall be deemed and considered to be in the legal custody of the Court, and shall remain subject to the jurisdiction of the Court, until such time as all such funds shall be distributed pursuant to this Agreement and/or further order of the Court.

Subject to Court approval, the Settlement Fund will be used to cover:

a.   The monetary relief for the Class;

b.   The costs attendant to notice of this Settlement;

c.   The costs attendant to distributing monies from the Settlement Fund;

d.   Any award of attorneys' fees;

e.   Any service award for the Representative Plaintiff; and

f.   Reimbursement of Class Counsel's litigation expenses.

Class Counsel shall retain a claims administrator, Heffler Claims Group LLC, to identify the bank account information and addresses of Class Members in the manner described in this agreement and the Plan of Distribution, provide notice to the class, and distribute the proceeds of the monetary relief for the class.  The claims administrator shall abide by the Court's preliminary approval order and the Plan of Distribution attached as Exhibit 1.  For the avoidance of doubt, Zions' sole obligation and responsibility is to make the payment to the account designated by Class Counsel to fund the Settlement Fund described in Section 2.1.  Zions shall have no responsibility or obligation relating to the payment and distribution of proceeds from the Settlement Fund to the Class, any individual Class Member, or other Person, or for any costs,

expenses, claims, or fees relating to this Settlement or the administration thereof..

Notwithstanding this provision, Zions shall bear the costs of complying with its obligations

under the Class Action Fairness Act, as set forth in 28 U.S.C. § 1715.

    **2.3**    **The Contingent Fund.**  Subject to the claim process set forth below in this

Section 2.4, Zions will make available up to an additional Two Hundred Fifty Thousand Dollars

($250,000.00) (the "Contingent Fund") to provide monetary relief to Class Members as to whom

ACH debit entries or remotely-created check drafts on their accounts were prepared by Teledraft

on behalf of the Vexeldale-related entities identified in paragraph 16 of the Second Amended

Complaint during the period of February 15, 2008 through September 1, 2009, and all such

individuals who incurred bank charges as a consequence of such ACH debit entries or remotely-

created check drafts (the "Teledraft/Vexeldale Class Members").  The claims administrator shall

calculate the amount of each Teledraft/Vexeldale Class Members' claim in the same manner as

all other Class Members.  Notwithstanding the foregoing, the Contingent Fund represents the

maximum amount payable by Zions in addition to the Settlement Fund, and does not represent a

liquidated and certain obligation by Zions to either the claims administrator, the

Teledraft/Vexeldale Class Members, or the Class generally.

    The Parties lack information identifying the Teledraft/Vexeldale Class Members, their

addresses, and their bank account numbers.  Accordingly, the claims administrator at direction of

Class Counsel will provide notice of this Settlement to the Teledraft/Vexeldale Class Members

through publication notice as set forth in Section 4.4 below.  Any Teledraft/Vexeldale Class

Members responding to the publication notice will have to submit to a claims process

administered by the claims administrator at the direction of Class Counsel, in which they will

have to affirm under penalty of perjury (a) that funds were withdrawn  from their account by a

Vexeldale-related entity (as defined in paragraph 16 of the Second Amended Complaint) and/or (b) that they incurred bank charges as a consequence of such ACH debit entries or remotely-created check drafts, and (c) the amount of such ACH debit, remotely-created check draft, or bank charge. The claims administrator will then determine whether the claimed amount of loss is commensurate with the type of debits charged by the Vexeldale-related entities identified in paragraph 16 of the Second Amended Complaint (a "Conforming Claim"). Upon receipt of notice from the claims administrator of Conforming Claims, Zions will deliver a portion of the Contingent Fund to the claims administrator for the claims administrator to pay any such Conforming Claims until the total amount to be distributed reaches $250,000.00, after which any further claims by the Teledraft/Vexeldale Class Members will be paid by the claims administrator from the Settlement Fund.

If before preliminary approval of the Settlement, the Parties obtain name, address, and bank account information for the Teledraft/Vexeldale Class Members, the Teledraft/Vexeldale Class Members will receive direct notice of this Settlement from the claims administrator pursuant to Section 4.3 below. Upon receipt of notice from the claims administrator of the verifiable amount that will be disbursable to Teledraft/Vexeldale Class Members, Zions will deliver that amount to the claims administrator up to, but not to exceed, $250,000.00, after which any further amount will be paid by the claims administrator from the Settlement Fund.

The distribution of monies to the Teledraft/Vexeldale Class Members shall follow the process set forth in Section 7.1 below and Exhibit 1 hereto. For the avoidance of doubt, Zions' sole obligation and responsibility is to deliver the applicable portion of the Contingent Fund to the claims administrator. Zions shall have no responsibility or obligation relating to the payment and distribution of proceeds from the Contingent Fund to the Class, any individual Class

Member, or other Person, or for any costs, expenses, claims, or fees relating to this Settlement or the administration thereof..

### 2.4     Qualified Settlement Fund

The Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1 and that the Escrow Agent, as administrator of the Settlement Fund within the meaning of Treasury Regulation §1.468B-2(k)(3), shall be responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)) for the Settlement Fund.  Escrow Agent shall also be responsible for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund.  Zions shall not have any liability or responsibility for any such taxes.  Upon written request, Zions will provide to Escrow Agent the statement described in Treasury Regulation § 1.468B-3(e).

Escrow Agent, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this Section 2.5, including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.468B-l G), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

All taxes shall be paid out of the Settlement Fund, and shall be timely paid by the Escrow Agent, and without further order of the Court.  Any tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with the previous paragraph in this Section 2.5 and in all events shall reflect that all taxes on the income earned by the Settlement

8

Fund shall be paid out of the Settlement Fund as provided herein.  Zions shall have no responsibility or liability for the acts or omissions of the Escrow Agent with respect to the payment of taxes, as described herein.

**3.      The Settlement Class**

For settlement purposes only, the Parties agree that the Court may certify a Settlement Class defined as follows:

> All individuals in the United States as to whom ACH debit entries or remotely-created check drafts on their accounts were prepared by Defendants on behalf of the merchants identified as "Telemarketing Enterprises" in Plaintiff's Second Amended Complaint during the period of January 26, 2006 through the present, and all individuals who incurred bank charges as a consequence of such ACH debit entries or remotely-created check drafts.

**4.      Approval of This Agreement and Dismissal of Claims**

**4.1      Reasonable Efforts.**  The Parties agree that the terms of this Agreement reflect a good-faith settlement of disputed claims.  Zions and Plaintiff will use reasonable efforts to seek approval of the Agreement by the Court to secure the prompt, complete, and final dismissal with prejudice of the Action.

**4.2      Motion for Preliminary Approval.**  Not later than ten (10) business days from execution of this Agreement, unless the Parties otherwise agree, or if the Court otherwise orders, Plaintiff shall submit to the Court a motion, seeking preliminary approval of the Settlement Class and of the Settlement, authorization to disseminate notice of such Settlement, and final judgment, all as contemplated by this Agreement, to all potential members of the Class, subject to approval by the Court (the "Motion").  The Motion shall include: (i) a proposed form of, method for, and date of dissemination of notice (which notice shall be part of the notice that is disseminated to the Class); and (ii) a proposed form of final judgment order.  Plaintiff and Zions shall endeavor

to agree upon the text of the items referred to in clauses (i) and (ii) above before submission of the Motion and the Court shall finally determine the text and content of those items. The form and content of the Motion shall be subject to Zions' review and consideration before it is submitted to the Court. The Parties agree to use reasonable efforts to resolve any disputes concerning the content of the Motion before it is submitted to the Court.

**4.3    Mailed Notice.** For those Class Members for whom the Parties have address information, the claims administrator shall mail notice to them by a form that will require return of undelivered items. The notice may be by post card or such other method recommended by the claims administrator and shall refer class members to a more complete form of notice maintained on a website.

In addition to the required provisions of Rule 23, the notice shall prominently offer a means for the Class Member to update his or her bank account information. To limit fraud, class members utilizing this option will be required to identify what bank(s) they used from January 26, 2006 through March 31, 2010 to allow for cross-referencing against the available databases. The notice will advise Class Members of the claims administrator's intent to deliver settlement funds via ACH. Class Members will be allowed to confirm or update his or her address and request that a check be sent to them rather than receive settlement fund via ACH and will be required to provide the same verification by identifying their bank(s) in January 26, 2006 through March 31, 2010.

Before notices are sent, the claims administrator shall run the following through the Lexis-Nexis database generally used by the claims administrator to update address information: (1) the databases furnished by Zions during the litigation, (2) the database obtained from the Federal Trade Commission for class members debited through Teledraft on behalf of the

"NHS/PHS" entities identified in paragraph 11 of the Second Amended Complaint, and, if discovered prior to preliminary approval, (3) any databases listing Teledraft/Vexeldale Class Members.

For Class Members whose notices are returned and who have claims above Two Hundred Fifty Dollars ($250), the claims administrator will undertake additional efforts to find their current address. The claims administrator at the direction of Class Counsel will send the names and last known address of these Class Members to a vendor selected by the claims administrator for more sophisticated attempts to obtain their address for purposes of making a distribution to them.

**4.4    Publication Notice.**  The claims administrator shall cause a short form notice to be published in an appropriate issue of Parade Magazine, or equivalent nationally distributed magazine as recommended by the claims administrator.  Said notice shall comply with the required provisions of Rule 23 and will refer class members to an appropriate detailed notice maintained on a website which shall contain a means for filing a claim by class members.

**4.5    Timing of Mailing and Publication of Notice.**  Class Counsel and the claims administrator shall make every effort to ensure that notice is mailed and published as soon as is practicable, seeking to complete mailing and publication not later than 60 days after the Court preliminarily approves of the Settlement.

**4.6    Hearing on Final Approval of Settlement.**  Zions and Plaintiff will jointly request that the Court hold a hearing on final approval of the Settlement no earlier than thirty (30) days following the completion of the latter of the mailing or publication notice under Sections 4.3 and 4.4 above.

**4.7     Proposed Final Judgment Order.**  If the Court approves this Agreement, Zions and Plaintiff shall jointly seek entry of an order of final judgment, the text of which Zions and Plaintiff shall agree upon:

        A.     approving finally this Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Class Members within the meaning of Federal Rule of Civil Procedure 23 and directing its consummation according to its terms;

        B.     awarding Class Counsel's attorneys' fees and reimbursement of litigation expenses;

        B.     directing that the Action be dismissed with prejudice and without costs;

        C.     reserving exclusive jurisdiction over the settlement, this Agreement, the settlement fund and the award of attorney's fees and costs;

        D.     releasing Zions to the extent described in Section 10 below.

**4.8     Finality of Agreement.**  This Agreement shall become final when (i) the Court has entered a final order approving this Agreement under Federal Rule of Civil Procedure 23(e) and a final judgment dismissing the Action on the merits with prejudice as to all Class Members, and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as described in clause (i) above has expired, or, if appealed, approval of this Agreement and the final judgment have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review.  It is agreed that, for purposes of finality under this Section 4.8, the time for appeal or to seek permission to appeal shall be thirty (30) days, as provided by Federal Rule of Appellate Procedure 4(a)(1)(A).

**4.9     Invalidity on Modification or Disapproval of Settlement Agreement.**  In the event the Court or any appellate court modifies, disapproves of, or sets aside this Agreement or any part thereof deemed material by Zions or Plaintiff at the time of such Court modification, disapproval, or setting aside, then each of Zions and Plaintiff shall have the right to withdraw from, terminate, and abandon this Agreement.  Zions and Plaintiff agree to seek, in good faith, a resolution of their differences with respect to any action by the Court with respect to this Agreement.  In the event resolution cannot be attained, Zions and Plaintiff shall each have the right to withdraw from, terminate, and abandon this Agreement.

**4.10     Invalidity on Modification or Disapproval of Final Judgment Order.**  In the event the Court holds that it will not enter or give effect to the Proposed Final Judgment Order set forth in Section 4.7 above without modification, then Zions and Plaintiff agree to seek, in good faith, a resolution of their differences that they believe will be granted final approval by the Court and upheld on appeal.  In the event resolution cannot be attained, Zions and Plaintiff shall each have the right to withdraw from, terminate, and abandon this Agreement.

**4.11     Reservation of Rights.**  Zions and Plaintiff expressly reserve all of their rights if the Agreement is not finally approved or is abandoned under Sections 4.9, 4.10, or 5.3.

**5.     Class Notice and Right to Opt-Out**

**5.1     Notice to Class.**  In connection with the Motion for preliminary approval of this Settlement, Zions and Plaintiff shall submit to the Court for its approval under Rule 23(b)(3) of the Federal Rules of Civil Procedure, agreed upon proposed forms of Notice and a Notice Plan, which in their opinion fully satisfy Rule 23 of the Federal Rules of Civil Procedure and requirements of due process.  The Court retains the final authority to determine the form of notice, and will consider separate submissions from Zions and Plaintiff if they are unable to

agree upon a proposed set of notices and claim forms to be submitted to the Court for approval.
No further notice shall be required after the Court enters a judgment finally approving the
settlement of the Action.

       **5.2**     **Opt-Out Rights.**  Any potential member of the Class shall have the right to opt
out of the Class by sending a written request for exclusion from the Class to the address listed in
the Notices, postmarked no later than a deadline to be set by the Court, which deadline shall be
set forth in the Notices. An opt-out request must be signed by the recipient of the Notice and
potential member of the Class requesting exclusion, including the requestor's full name and
current address.

       **5.3**     **Zions' Right to Withdraw Based on Exercise of Opt-Out Rights.** If five (5)
percent or more of the Class exercise their right to opt out of the Class under Section 5.2, Zions
shall have the right to withdraw from, terminate, and abandon this Settlement Agreement.

**6.**     **Zions' Right to Return of Settlement Funds**

       In the event of termination and abandonment of this Agreement for any reason, including,
without limitation, those set forth in Sections 4.9, 4.10, and 5.3 above, Escrow Agent shall cause
all funds and any accrued interest or dividends earned on the Settlement Fund to be transferred
back to Zions within five (5) days, less the costs attendant to providing notice to the class. For
the avoidance of doubt, it is acknowledged and agreed that before this Agreement is deemed
final by the Court, as set forth in Section 4.8 above, Class Counsel may only disburse monies
from the Settlement Fund to fund notice under Sections 4.3 and 4.4 above, which shall include
the fees of the claims administrator accrued prior to this Agreement being deemed final by the
Court. For avoidance of doubt, it is acknowledged and agreed that after this Agreement is
deemed final by the Court, as set forth in Section 4.8 above, Zions shall have no further interest

in the Settlement Fund and may not make claim to, or have any right to return of, any portion the fund.

**7.      Distribution Plan**

      **7.1      Distribution Plan.**  Once the agreement is final and the time for any appeal has elapsed, Class Counsel and the claims administrator shall follow the Plan of Distribution set forth in Exhibit 1.  The Plan of Distribution shall be submitted to the Court as part of the proposed order granting preliminary approval of the settlement.  Funds may disbursed to Class Members only upon Court approval.

      **7.2      Responsibilities of Class Counsel and the Claims Administrator.**  The claims administrator shall administer the Settlement under Class Counsel's supervision and direction, all of which shall be subject to the exclusive jurisdiction of the District Court.  Zions shall have no role in or responsibility (including without limitation monetary responsibility) for administering the Settlement; no role or responsibility in notifying or identifying the account information or addresses of Class Members; no role in or responsibility for reviewing, approving or challenging the claims submitted; and no liability whatsoever to any Person, including, but not limited to, the Class Representative, other Class Members, any Class Member's counsel, or Class Counsel, in connection with the administration of the Settlement or regarding any claim or dispute with any Person arising out of the distribution of monies from the Settlement Fund or Contingent Fund pursuant to Class Counsel's Plan of Distribution attached hereto as Exhibit 1.

      **7.3      Class Members' Interest in the Fund.**  No Class Member shall have a property right or property interest in the Settlement Fund or Contingent Fund unless and until the claims administrator can ascertain the Class Member's current bank account information or physical address.  Any Class Member whose current bank account information or physical address cannot

be ascertained by the claims administrator so as to receive a disbursement from the Settlement

Fund or Contingent Fund shall have no property right or property interest in the Settlement Fund

or Contingent Fund. Any Class Member who has not successfully deposited their disbursement

within 120 days of the initial distribution shall have forfeited any right to the Settlement Fund or

Contingent Fund, and shall have no property right or property interest in the Settlement Fund or

Contingent Fund. This provision shall not apply to any Class Member who has contacted the

claims administrator or Class Counsel within 120 days from the date of distribution to report a

problem with his or her disbursement. For the avoidance of doubt, this provision shall also apply

to Teledraft/Vexeldale Class Members who receive notice as described in Sections 4.3 and 4.4.

8.      **Award to the Class Representative**

        Class Counsel will request Court approval of a service award to be paid from the

Settlement Fund.

9.      **Attorney's Fees and Costs**

        Class Counsel will request Court approval of an award of attorney's fees and costs from

the Settlement Fund.

10.     **Release and Discharge**

        **10.1**    Upon final approval of the Agreement as set forth in Section 4.8 above, Class

Representative, each Class Member who has not opted out of the Settlement in accordance with

the terms of this Agreement, and each of their respective executors, representatives, heirs,

successors, bankruptcy trustees, guardians, and all those who claim through them or who assert

claims on their behalf, will be deemed to have completely released and forever discharged the

Released Parties, and each of them, from any claim, right, demand, charge, complaint, action,

cause of action, obligation, or liability of any and every kind, based on the allegations in the

Second Amended Class Action Complaint filed in the Action, including, without limitation, the

16

alleged processing of ACH debit entries and RCC's by Zions and Teledraft on behalf of the merchants identified as "Telemarketing Enterprises" in Plaintiff's Second Amended Complaint, which arise under any federal, state, or local law, statute, regulation, or common law, and all claims for monetary, equitable, declaratory, injunctive, or any other form of relief arising thereunder, whether known or unknown, suspected or unsuspected, under the law of any jurisdiction, which Class Representative or any Class Member ever had or now has, which could have been raised in the Action based on the facts alleged in the Second Amended Class Action Complaint (the "Released Claims"). This Agreement shall constitute, and may be pleaded as, a complete and total defense to any Released Claims if raised in any other action.

      **10.2**    In addition to the provisions of Section 10.1, each member of the Settlement Class hereby expressly waives and releases, upon this Agreement being deemed finally approved by the Court pursuant to Section 4.8 above, any and all provisions, rights and benefits conferred by Section 1542 of the California Civil Code, which reads:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to Section 1542 of the California Civil Code. Each member of the Settlement Class may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims which are the subject matter of the provisions of Section 10.1 above, but each member of the Settlement Class hereby expressly waives and fully, finally and forever settles and releases, upon this Agreement being deemed finally approved by the Court pursuant to Section 4.8 above, any known or unknown, suspected

17

or unsuspected, contingent or non-contingent claim which is the subject matter of Section 10.1 above, without regard to the subsequent discovery or existence of such different or other facts.

## 11.   No Admissions

This Agreement, whether or not finally approved pursuant to Section 4.8 above, or whether or not a final judgment is entered, and any and all negotiations, documents, and discussion associated with it, shall not be deemed or construed to be an admission or evidence of any violation of law, statute, or regulation, or of any liability or wrongdoing by Zions, or of the truth of any of the claims or allegations contained in the complaints, motions, briefs, opinions, or other papers filed in the Action, and evidence thereof shall not be discoverable or used, directly or indirectly, in any way, whether in the Action or in any other action or proceeding of any kind. Nor shall this Agreement, whether or not finally approved pursuant to Section 4.8 above, or whether or not a final judgment is entered, and any and all negotiations, documents, and discussion associated with it, be deemed or construed to be an admission of any weakness in Plaintiff's allegations.

## 12.   Dismissal of Action

The Class Representative, on behalf of himself and the Class Members, consents to the dismissal of the Action with prejudice in accordance with the terms of this Agreement, and the Parties hereby stipulate to the entry of the Final Judgment.

## 13.   Miscellaneous

**13.1    Continuing Jurisdiction.**  The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement as well as the fund.  The Court shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or arising out of or relating to the Court's award of attorneys' fees

and reimbursement of expenses that cannot be resolved by negotiation and agreement by the Parties.

**13.2    Governing Law.**  This Agreement shall be governed by and interpreted according to the substantive laws of the Commonwealth of Pennsylvania without regard to its choice of law or conflict of laws principles, except to the extent to which the laws of the United States of America preempt Pennsylvania substantive law.

**13.3    Entirety.**  This Agreement constitutes the entire agreement between the Parties and supersedes all prior understandings, agreements, or writings regarding the subject matter of this Agreement.  This Agreement may be modified or amended only by a writing signed by Plaintiff, Class Counsel, and Zions, and approved by the Court.

**13.4    Public Statements Regarding the Action and Settlement**.  The Parties agree to limit public comments regarding the Action and Settlement to the contents of documents of public record.

**13.5    No Construction Against Drafter.**  This Agreement shall be deemed to have been drafted by the Parties, and any rule that a document shall be interpreted against the drafter shall not apply to this Agreement.

**13.6    Notice to Parties.**  Where this Agreement requires any Party to provide notice or any other communication or document to any other Party, such notice, communication, or document shall be provided by email or letter by overnight delivery to the following persons:

> If to Zions:
>
> Grant S. Palmer
> Blank Rome LLP
> One Logan Square
> 130 North 18th Street
> Philadelphia, PA 19103
> Tel: (215) 569-5578

palmer@blankrome.com

If to Plaintiff, Class Counsel, or Escrow Agent:

Howard I. Langer
John J. Grogan
Peter E. Leckman
Langer, Grogan & Diver, P.C.
1717 Arch Street
Suite 4130
Philadelphia, PA 19103
Tel: (215) 320-5660
hlanger@langergrogan.com

**13.7   Agreement Binding on Successors in Interest.**   This Agreement shall be binding on and inure to the benefit of the respective heirs, successors, and assigns of the Parties.

**13.8   Execution in Counterparts.**   This Agreement shall become effective upon its execution by the Parties.  This Agreement may be executed in counterparts.  Each counterpart shall be deemed to be an original, and execution of counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**13.9   Parties Authorized to Enter into Settlement Agreement.**   Each person executing this Agreement on behalf of a Party covenants, warrants, and represents that he is and has been fully authorized to do so by such Party.

| | |
|---|---|
| Howard I. Langer<br>Langer, Grogan & Diver, P.C.<br>1717 Arch Street<br>Suite 4130<br>Philadelphia, PA 19103<br><br>*On behalf of Plaintiff Reynaldo Reyes and the Settlement Class (as defined above)* | Thomas E. Laursen<br>Executive Vice President & General Counsel<br>Zions Bancorporation<br>One South Main Street<br>Salt Lake City, UT 84133<br><br>*On behalf of Defendants Zions First National Bank, NetDeposit, LLC, and MP Technologies d/b/a Modern Payments* |

palmer@blankrome.com

If to Plaintiff, Class Counsel, or Escrow Agent:

Howard I. Langer
John J. Grogan
Peter E. Leckman
Langer, Grogan & Diver, P.C.
1717 Arch Street
Suite 4130
Philadelphia, PA 19103
Tel: (215) 320-5660
hlanger@langergrogan.com

**13.7    Agreement Binding on Successors in Interest.**  This Agreement shall be binding

on and inure to the benefit of the respective heirs, successors, and assigns of the Parties.

**13.8    Execution in Counterparts.**  This Agreement shall become effective upon its

execution by the Parties.  This Agreement may be executed in counterparts.  Each counterpart

shall be deemed to be an original, and execution of counterparts shall have the same force and

effect as if all Parties had signed the same instrument.

**13.9    Parties Authorized to Enter into Settlement Agreement.**  Each person

executing this Agreement on behalf of a Party covenants, warrants, and represents that he is and

has been fully authorized to do so by such Party.

| | |
|---|---|
| Howard I. Langer<br>Langer, Grogan & Diver, P.C.<br>1717 Arch Street<br>Suite 4130<br>Philadelphia, PA 19103<br><br>*On behalf of Plaintiff Reynaldo Reyes and the Settlement Class (as defined above)* | Thomas E. Laursen<br>Executive Vice President & General Counsel<br>Zions Bancorporation<br>One South Main Street<br>Salt Lake City, UT 84133<br><br>*On behalf of Defendants Zions First National Bank, NetDeposit, LLC, and MP Technologies d/b/a Modern Payments* |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REYNALDO REYES,<br>    *on Behalf of Himself and All Others*<br>    *Similarly Situated,*<br><br>                Plaintiff,<br><br>v.<br><br>ZIONS FIRST NATIONAL BANK,<br>NETDEPOSIT, LLC, MP TECHNOLOGIES<br>d/b/a MODERN PAYMENTS, and TELEDRAFT,<br>INC.<br><br>                Defendants. | Civ. A. No. 2:10-cv-0345 |

## EXHIBIT 1: PLAN OF DISTRIBUTION

a)  For each class member for whom there is a record, their account information will be sorted by routing number. The routing numbers will be checked to determine whether the bank at issue has been acquired by another bank or has otherwise changed its status. The claims administrator shall be guided by the distributing bank as to how to proceed with accounts for which the routing number indicates the account was acquired by another bank.

b)  An ACH Pre-notification entry shall be sent over the ACH system to each class member for whom there is a record.

c)  For those class members where the pre-notification is not rejected, i.e. anyone for whom there is no response from the receiving bank or a positive response, an ACH credit will be sent to the class member's pre-notified account, pursuant to the method described in (h) below.

d)  For those class members for whom there is an address from which the notice has not been returned, but no valid bank account (including all persons rejected by either the pre-notification or the actual ACH transfer), a check will be mailed to the existing address. The check will either contain a limiting endorsement and/or be accompanied by a notice that after 120 days a stop order will be placed on the check.

1

e)  There will be written follow up by the claims administrator 30 days after mailing to recipients of all uncashed checks. There will be telephone follow-up sixty days following mailing to all recipients of checks above $250 that have not been cashed.

f)  If the Teledraft/Vexeldale databases are not discovered by preliminary approval and a claims process is required, the claims process (as described in the Settlement Agreement) shall be complete prior to final approval of the settlement to ensure that each class member's claim is based on the same formula.

g)  Pursuant to Section 2.2 of the Settlement Agreement, if the Teledraft/Vexeldale databases are discovered by the time of preliminary approval, the claims administrator shall inform Zions of the amount—not to exceed $250,000.00—that Zions must add to the Settlement Fund. This amount shall be added to the net Settlement Fund before distribution to the Settlement Class to ensure that each class member's claim is based on the same formula.

h)  The funds shall be distributed in the following manner:

1.  The net fund following payment of attorneys' fees, costs, an incentive award, and costs of notice and administration shall be divided pro-rata among qualified class members based upon their claim amount.[1]

2.  A claim amount shall consist of any sums debited from the class-member on behalf of one of the telemarketers and/or any NSF charges incurred by the victim. For purposes of the distribution an NSF charge shall be assumed where a return code in the database indicates an item was returned NSF. A claim amount shall be $25 for each NSF. Thus, by way of example, a person whose account was debited $100 on behalf of a telemarketer and shows three NSF return will have a claim amount of $175. A class member with just one NSF charge will have a claim amount of $25.

3.  The net fund, less any hold-back amount recommended by the claims administrator, will be distributed pro-rata based upon the relation of each qualified class member's claim amount to the total net fund.

4.  One hundred and twenty days following the initial distribution, the claims administrator shall calculate any funds remaining for distribution. These funds shall include any initial ACH distribution which was returned by the receiving

---

[1] Qualified class members are those class members to whom funds were successfully distributed pursuant to paragraphs (c) and (d) above.

bank, any funds attributable to checks which were not cashed, and any other remaining funds, less an amount to pay any fees of the claims administrator. This remaining fund shall be distributed pro-rata based upon the claim amounts to all qualified class members whose initial ACH distribution was successful or whose check cleared, provided a sufficient sum exists to warrant such distribution.[2]

5. All funds remain property of the collective class fund until an ACH transaction actually clears or a check is actually deposited by the recipient. Any funds represented by a returned ACH item or any check not deposited within 120 days of the initial distribution shall be property of the collective class fund and not of any individual.

6. Any remaining fund that the claims administrator deems to be economically impracticable to distribute to the class shall be distributed a *cy pres* designee designated by Class Counsel and approved by the Court.

7. Under no circumstances shall any sums held in the fund be deemed the property of any individual class member.[3]

8. Under no circumstances shall any part of the fund revert to the defendants or their insurers.

i) In the event any element of the above plan of distribution proves impracticable, Class Counsel shall recommend appropriate alternative methods of distribution to the Court.

---

[2] The value of a claim will change if subsequent distributions are required. Accordingly, if Zions has not already exhausted the $250,000.00 Contingent Fund, the Claims Administrator shall notify Zions of the additional sums it must add to the fund before a subsequent disbursement is made to qualified Class Members.

[3] Because there is account information for the class members debited on behalf of Group One, but not their addresses, individual notice will not be mailed to these class members. However, since the information exists allowing implementation of the distribution procedure, the distribution procedures outlined above will be followed.